UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JERRY LENEZ BANGMON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-138 |
| | § | |
| HENRY LANCE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER OF PARTIAL DISMISSAL AND SEVERANCE

Jerry Lenez Bangmon (TDCJ #01568309), an inmate in the custody of the Texas Department of Criminal Justice ("TDCJ"), has filed a complaint under 42 U.S.C. § 1983 in which he alleges: (1) that he was denied procedural due process in prison disciplinary proceedings; (2) that Defendant Shenika Kelly, a correctional officer, retaliated against him for filing a grievance against her; and (3) that Defendant Henry Lance, another correctional officer, smashed Bangmon's hand when Bangmon refused to eat a meal containing pork. These claims are independent of each other and do not belong in one lawsuit. Moreover, the procedural due process claims, as explained below, fail to state a claim because Bangmon is not eligible for release to mandatory supervision. The Court will dismiss the procedural due process claims and sever the claims against Kelly from those against Lance. Pursuit of both severed cases will entail Bangmon's paying two separate filing fees. If Bangmon only wishes to pay one fee, the Court will give Bangmon 30 days to inform the Court as to which of the two severed cases he does not want to pursue.

### A. The procedural due process claims

Bangmon first alleges that he was deprived of procedural due process in two prison disciplinary proceedings. After one of those proceedings, he was placed on recreation and commissary restriction for 20 days (Dkt. 2 at p. 3); after the other, he was placed on recreation and commissary restriction for 30 days, had his custodial classification reduced, and lost 150 days of good time (Dkt. 4 at p. 3). Bangmon, who is serving a sentence for aggravated kidnapping, is not eligible for release to mandatory supervision. *See* TEX. GOV'T CODE § 508.149(a)(4).

An inmate's rights in the prison disciplinary setting are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). A prisoner charged with institutional rules violations is only entitled to relief under the Due Process Clause when the disciplinary action resulted in a sanction that infringed upon a constitutionally protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483–87 (1995) ("[N]either the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*."). These protected liberty interests can emanate from either the Due Process Clause itself or from state law—*Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)— but the range of protected interests "has been dramatically narrowed" by the Supreme Court, particularly in its *Sandin* opinion. *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995). The cases indicate that, in order to trigger protection under the Due Process Clause directly (i.e. without implicating a state-created liberty interest), state action must subject

the prisoner to consequences that are "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Toney v. Owens*, 779 F.3d 330, 337 (5th Cir. 2015) (quoting *Vitek v. Jones*, 445 U.S. 480, 493 (1980)); *see also Thompson*, 490 U.S. at 460. Such consequences can include, for instance, an involuntary transfer from a state prison to a mental hospital for psychiatric treatment; the forcible administration of psychotropic drugs; and the imposition of sex-offender classification and conditions on a prisoner who has not been convicted of a sex offense. *See Vitek*, 445 U.S. at 493–94; *Washington v. Harper*, 494 U.S. 210, 221–22 (1990); *Toney*, 779 F.3d at 336–37. Similarly, state-created liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). A state's action can also implicate procedural due process protection when that action "will inevitably affect the duration of [the prisoner's] sentence." *Id*. at 487.

Bangmon's claims do not come within the range of protected liberty interests. The reduction in Bangmon's time-earning classification may have affected Bangmon's eligibility for early release from prison. But the Due Process Clause does not include a right to conditional release before the expiration of a valid sentence, and the Texas parole statutes do not create a protected liberty interest because parole in Texas is entirely discretionary. *Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S.

1, 7 (1979); *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007); *Kyle*, 65 F.3d at 32. Moreover, the Fifth Circuit has held that reductions in a prisoner's time-earning status, and the potential impact of those reductions on good-time credit earning ability, are too attenuated from the prisoner's ultimate release date to invoke the procedural guarantees of the Due Process Clause. *Malchi v. Thaler*, 211 F.3d 953, 958–59 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). The changes in the conditions of Bangmon's confinement that are attendant to the reduction in his custody classification do not affect the duration or fact of Bangmon's confinement and do not constitute atypical, significant hardships that go beyond the ordinary incidents of prison life. They therefore do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997); *Malchi*, 211 F.3d at 958. The same is true of the temporary limitations imposed on Bangmon's privileges. *Id*.

Bangmon's loss of 150 days of good-time credit could have been more problematic than the other sanctions. As the Fifth Circuit has explained, Texas provides two general ways in which an inmate can become eligible for early release: (1) parole, which is completely discretionary; and (2) mandatory supervision, under which early release is virtually assured (parole officials retain a modicum of discretion in the matter) once an inmate's time served added to his good-time credit equals the length of his sentence. *Teague*, 482 F.3d at 774–77. Texas state inmates who are eligible for release on mandatory supervision have a protected liberty interest in their previously earned good-time credit. *Id*. However, Bangmon, as previously noted, is not eligible for release on mandatory supervision. *See* TEX. GOV'T CODE 508.149(a)(4). Because he is not eligible

for release on mandatory supervision, he does not have a protected liberty interest in his good-time credit. *Madison*, 104 F.3d at 768–69.

Bangmon has not stated a viable procedural due process claim. None of the sanctions imposed on Bangmon either constituted an "atypical and significant hardship" or inevitably affected the duration of Bangmon's sentence. The sanctions, as a result, were simply not Constitutionally actionable.

### B. The retaliation and excessive force claims

Bangmon's retaliation and excessive force claims, on the other hand, warrant further exploration. However, they are unrelated and do not belong in the same lawsuit, so the Court will sever them. An attempt to file multiple lawsuits in one complaint violates Federal Rules of Civil Procedure 18 and 20, which set out the limits on joinder of claims and parties. The Fifth Circuit has discouraged the "creative joinder of actions" by prisoners attempting to circumvent the fee-payment and three-strikes provisions of the Prison Litigation Reform Act ("PLRA"). *See Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *see also, e.g., Covarrubias v. Foxworth*, No. 6:13-CV-812, 2017 WL 1159767 (E.D. Tex. Mar. 29, 2017) (severing prisoner lawsuit consisting of unrelated claims into three separate cases); *Nelson v. Francis*, No. 2:02-CV-347, 2003 WL 21766528 (N.D. Tex. July 29, 2003) (severing prisoner lawsuit consisting of unrelated claims into seven separate cases). Bangmon has filed an application for leave to proceed *in forma pauperis* (Dkt. 15) and a prisoner trust fund account statement (Dkt. 10). This information is sufficient for the Court to charge a filing fee under the PLRA,

but Bangmon is again advised that he must pay two filing fees if he wants to pursue both of these cases.

Based on the foregoing, the Court **ORDERS** as follows:

1. This case is **SEVERED** into two separate lawsuits. The first lawsuit, which will carry this case number, will consist of the retaliation claim against Defendant Shenika Kelly. The second lawsuit will carry a case number assigned by the District Clerk and will consist of the excessive force claim against Defendant Henry Lance.

2. **Within 30 days of the date of this order**, Bangmon must notify the Court as to whether he wishes to pay two filing fees. If Bangmon only wishes to pay one filing fee, he must specify which of the two severed cases he wants to pursue. The other case will be dismissed without prejudice to refiling.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 22nd day of January, 2018.

_____
George C. Hanks Jr.
United States District Judge